IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CLINT NATHAN GEORGE and | ) | Case No. 07-21574 |
| CONNIE LINN GEORGE, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| AMERICAN FAMILY MUTUAL | ) | |
| INSURANCE COMPANY as Assignee | ) | |
| of PATRICK T. QUEENAN, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. No. 08-02002 |
| | ) | |
| v. | ) | |
| | ) | |
| CLINT NATHAN GEORGE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This matter comes before the Court on the Motion for New Trial ("Motion") filed by Clint Nathan George ("Debtor" or "Defendant") for the trial held on November 20, 2008, regarding the complaint of plaintiff American Family Mutual Insurance Company, as Assignee of Patrick T. Queenan ("American Family") to determine dischargeability under 11 U.S.C. § 523(a)(6). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, the Court denies the Debtor's Motion and Debtor's request that the Order be altered or amended.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On or about August 2, 2001, Debtor was hired by Patrick T. Queenan to lift and preserve Mr. Queenan's 1990 Cigarette recreational boat after it sunk at the boat dock adjacent to Mr. Queenan's property within the Lake of the Ozarks. The boat was purchased by Mr. Queenan in the summer of 2000 for $85,000.[1] Debtor raised the boat from the dock, took possession of the boat and transported it to his place of business. The following day, Debtor presented Mr. Queenan with a recovery bill of $43,000. Mr. Queenan was understandably unprepared for a bill which was nearly half of the boat's purchase price, but being keenly aware that time was of the essence when dealing with a boat that has taken on water, he left his boat with Debtor and asked him to do whatever was necessary to salvage the three engines and preserve the boat's interior and exterior while he attempted to negotiate the bill in order to get it back. When Mr. Queenan regained possession of his boat two years later, it was in deplorable condition.

Mr. Queenan's insurance carrier, American Family conducted the first inspection of the boat on or about October 8, 2001.[2] The first inspection occurred in a parking lot in Camdenton, Missouri. In the report, the inspector suggested that the engines would require removal and repair and identified Anchor Marine as a qualified shop to handle this job. The inspector also noted that Debtor's recovery charge of $43,000 was based upon 10% of the vessel's value according to Maritime Law for the salvage recovery of vessels and that Debtor had assigned to the boat a value in excess of $400,000. The inspector noted both in his report and at trial that Debtor's evaluation and application of this formula for determining the recovery

---

[1] Plaintiff's Exhibit D.

[2] Plaintiff's Exhibit E.

fee was flawed for two reasons. First, according to NADA the boat's value was between $110,000 and $115,000. Second, according to the inspector, Maritime Law only has jurisdiction over navigable riverways that are regulated by International Law and charging a recovery fee based upon a percentage requires the abandonment of the vessel and/or a formal declaration of the owner, neither of which occurred in this case. In other words, Debtor's recovery charge of $43,000 for what amounted to approximately nine hours of work was simply extortion.

The second inspection occurred pursuant to a Camden County Circuit Court Order directing Debtor to deliver the boat to Anchor Marine.[3] The boat was delivered to Anchor Marine on February 20, 2002 and the inspection occurred on February 27, 2002. American Family's inspector, who has been a marine surveyor, inspecting damaged boats since 1996, described the condition of the boat upon its return to Mr. Queenan as his new benchmark for how bad a vessel can look if one fails to properly preserve it after it takes on water. The three engines once worth approximately $45,000 total were worth only their scrap value. The electric wires were completely corroded, the upholstery and interior wood was rotted and the hull was filthy. In addition to the exacerbated damage to the boat's three engines and interior, at the second inspection, there was new evidence of intentional hammering to the boat's tilt pins, evidence that the props had been drug across concrete, evidence that soda and beer cans had been strewn about the boat, and there was human feces in the toilet (which was particularly offensive considering there was no working plumbing). American Family paid $68,343.74 toward the claim and it received an assignment of the full amount of the damages incurred by Mr. Queenan as a result of Debtor's actions.

---

[3] Plainitff's Exhibit F.

Debtor and his spouse filed their petition in bankruptcy on January 15, 2008. American Family filed a complaint pursuant to §523(a)(6) alleging Debtor willfully and maliciously caused injury to its property (through assignment) and should therefore not be allowed to discharge the resulting debt. At trial, after hearing testimony from American Family's expert inspector Michael Hunter, reviewing the exhibits, the deposition of Michael Macchi from Anchor Marine and assessing the credibility of witnesses who testified at trial, the Court found in favor of American Family and announced that the debt owed by Debtor to American Family was nondischargeable pursuant to §523(a)(6).

Debtor filed a motion for new trial arguing that four of the instances of maliciousness which resulted in damage to the boat *could* have occurred while the boat was in the custody and control on an entity other than the Debtor. American Family requests that Debtor's motion be denied because it attempts to assert a new legal theory that could have been raised at the trial and, even if it had been raised, it argues that there is substantial, credible evidence in the record to refute Debtor's newly asserted allegations.

## II. DISCUSSION AND ANALYSIS

### A. Standards for Relief Under Rules 59(a) and (e) and 60(b)

The Court can only presume that Debtor seeks a new trial or amendment of the Order pursuant to Rules 59(a), (e) and/or 60(b) of the Federal Rules of Civil Procedure, which are made applicable to bankruptcy proceedings by Rules 9023 and 9024 of the Federal Rules of Bankruptcy Procedure. Rules 59(a) and (e) and 60(b) allow the bankruptcy court to alter, amend, or vacate a judgment after its entry or, in limited circumstances, reconsider a substantive aspect of a previously issued determination. *Nations Bank v. Blier (In re Creative Goldsmiths)*,

178 B.R. 87, 90-91 (Bankr. D.Md.1995). One of the primary purposes of a Rule 59(e) or 60(b) motion is to permit the correction of any manifest errors of law or misapprehension of fact. *In re DEF Investments, Inc*., 186 B.R. 671, 680 (Bankr. D.Minn.1995). "A manifest error of law is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent'." *Elza v. United States of America*, 335 B.R. 654, 657 (Bankr. E.D.Ky.2006) *citing Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir.2000). "A motion under Rule 59(a) in a non-jury case should be based upon a manifest error of law or a mistake of fact, and a judgment should not be set aside except for substantial reasons." *In re Jones*, 112 B.R. 975, 976 (Bankr. W.D.Mo.1989) *citing* 11 Wright & Miller Federal Practice and Procedure § 2804; *Solar Labs v. Cincinnati Advertising Products Co.,* 34 F.Supp. 783 (D. Ohio 1940), *appeal dismissed*, 116 F.2d 497 (6th Cir.1940). Rules 59(a) or (e) and 60(b) are not designed to provide an avenue for a disappointed party to relitigate a matter previously decided by the court, or to introduce new evidence, tender new legal theories, or to raise arguments which could have been offered prior to entry of the order. *United States of America v. Metropolitan St. Louis Sewer District,* 440 F.3d 930, 933 (8th Cir.2006); *Bannister v. Armontrout*, 4 F.3d 1434, 1440 (8th Cir.1993); *Jones*, 112 B.R. at 977. "Attempts to 'take a second bite at the apple' or pad the record for purposes of appeal are thus beyond the scope of Rules 59 and 60." *DEF Investments*, 186 B.R. at 681. When issues have been carefully analyzed and a judgment has been rendered, only a change in the law or the facts upon which the court's decision was based, will justify reconsideration of a court's previous order. *Id*. *citing Mannings v. School Bd. of Hillsborough County, Fla.*, 149 F.R.D. 235, 235 (M.D.Fla.1993). Relief afforded by Rules 59 and 60 is granted sparingly and is properly viewed as an extraordinary remedy. *See Kieffer v. Riske (In re Kieffer-Mickes, Inc.)*, 226 B.R. 204, 210

(B.A.P. 8th Cir.1998); *Wilson v. Runyon*, 981 F.2d 987, 989 (8th Cir.1992).

### B. Asserted Grounds for Relief from the Order

Debtor does not assert that a manifest error of law occurred.  Debtor's motion is based solely on the Court's alleged misconstruction of the facts.  Debtor argues that he should be granted a new trial because the following four incidents of maliciousness, which were cited by the Court as support for the Court's finding in favor of American Family, *could* have occurred while the boat was in the custody and control of Anchor Marine: (1) the skeg for the center drive was ground off three inches; (2) that tilt pins for the drive were deformed by a hammer; (3) that beer cans and cola cans were strewn throughout the boat; and (4) that the toilet was filled with human excrement.  Debtor is essentially arguing, for the first time, that because these incidents of maliciousness were not present at the first inspection conducted by American Family's inspector, and because there was a lapse of time between when custody and control of the boat was transferred from Debtor to Anchor Marine and when the second inspection took place, these incidents *could* have occurred by someone else during that time.

Plaintiff asserts that Debtor should not be granted a new trial based on this argument as he could have asserted this at the trial and a Rule 59 motion is not the proper time to raise new arguments.  Additionally, Plaintiff argues that the weight of the evidence substantially supports the Court's finding that the boat was damaged while in the custody and control of the Debtor and that such damage was willful and malicious.  Michael Macchi testified at his deposition, the transcript of which was properly admitted into evidence as Plaintiff's Exhibit L, that he was the mechanic who pulled the engines from the boat for American Family's inspector to inspect.  Mr. Macchi testified that he has been a marine service technician with Anchor Marine for about ten

years. He testified that no one at Anchor Marine, or American Family's inspector, was responsible for causing any additional damage to the boat's engines, placing the soda cans, beer bottles, trash or human excrement on the boat. He also testified that Anchor Marine sent the boat back to Debtor in the same condition that it received it in. Plaintiff points out, and the Court agrees, that Debtor has failed to establish even a hint of a chain of custody problem.

Debtor also asserts that extraordinary relief of a new trial is warranted based on a discrepancy between whether the human excrement was in the boat's toilet or on the cabin's floor. This discrepancy is minor compared to the weight of the evidence that supports the finding that Debtor willfully and maliciously caused all of the damage to the boat, including leaving human excrement on or about the boat. In addition to having no facts to support his newly asserted argument, Debtor has provided no motive. Why would anyone at Anchor Marine, which had no knowledge or relationship with either Mr. Queenan or the Debtor, want to cause such damage to the boat? Anchor Marine would have absolutely nothing to gain by further damaging the boat while it was in its custody and control. The Court, however, is convinced that Debtor's motive was that of spite or revenge. If Debtor was not going to get paid his exorbitant recovery fee and was going to be drug into court by Mr. Queenan, the boat was going to pay the price.

Finally, Debtor "suggests" in his motion that the boat's center skeg was damaged while the boat was being transported and the tilt pins were damaged while the engines were being disassembled. Based on Debtor's demeanor and utter lack of credibility at trial, the Court is not persuaded by Debtor's suggestion. Mr. Macchi has been a boat mechanic for 15 years so the likelihood that the tilt pins were damaged while he was disassembling the engines for inspection

is very small.  Additionally, based on the shocking level of damage and deterioration to the rest of the boat caused by Debtor's intentional acts or inaction, the Court does not believe that the center skeg damage occurred by mere negligence.   The evidence clearly supports the Court's finding that Debtor's failure to actively engage in the process of preserving the engines and the interior of the boat was akin to intentionally causing the exacerbated rusting, corrosion and rotting to the boat's interior and engines and that said inaction, coupled with the intentional acts of hammering portions of the boat,  dragging the prop across concrete, tossing soda and beer cans throughout the boat and leaving human feces on  the boat, constitutes damage which is willful and malicious under §523(a)(6).   The evidence also overwhelmingly supports the Court's finding that it was  Debtor who willfully and maliciously damaged the boat.

Therefore, for all of the reasons stated above, the Court finds that the Debtor has failed to show that relief from the Order is warranted pursuant to either Rule 59(a) or (e) or Rule 60(b). The Court denies Debtor's motion for new trial or to amend the Order.

ENTERED this 16th day of January 2009.

/s/ Dennis R. Dow

THE HONORABLE DENNIS R. DOW
UNITED STATES BANKRUPTCY JUDGE


Copies to:

Beth C. Boggs

Charles F. Johnson